UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

In re:

COMMUNITY MEMORIAL
HOSPITAL, d/b/a Cheboygan
Memorial Hospital,

  Debtor.

_____/

Case No. 12-20666
Chapter 11
Judge Daniel S. Opperman

CMH LIQUIDATING TRUST,

Plaintiff,

v.

TED ANDERSON; WILLIAM
BORGERDING; TIMOTHY BURANDT;
BRIAN BURNS; HOLLY CAMPA;
BARBARA CLIFF; EUGENE COOLEY;
DAVID COURTNEY; MARVIN COY;
LEIF DAHLEEN; NANCY DEXTROM;
BRIAN DIETZ; PAUL ELLINGER;
SUSAN ENO; JOHN EVERETT;
CARL FRANZON; MICHAEL KONICKI;
JAMES LAUGHLIN; GARY LEWINS;
KATHLEEN LIEDER; JAMES MCCLURG;
DANIEL NIELAND; DAVID ORAM;
JOHN PARIGI II; KENNETH PLETCHER;
CAROLYN RILEY; SHARI SCHULT;
FRED VITELLO; JOHN WARD; DONALD
WATSON; MICHAEL WEEKS, and HAL
YOST,

  Defendants.

_____/

Adversary Proceeding
No.  14-02020

# OPINION GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff Community Memorial Hospital Liquidating Trust's Amended Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) in ECF Nos. 219, 240, 241, 242, and 243, and pursuant to Federal Rule of Civil Procedure (12)(c) in ECF No. 244. For the reasons stated in the following opinion, this Court grants in part and denies in part the motions.

## I. FACTS/PROCEDURAL HISTORY

Community Memorial Hospital, d/b/a/ Cheboygan Memorial Hospital ("CMH") was a Michigan non-profit hospital that began operations in 1942. CMH filed for Chapter 11 Bankruptcy on March 1, 2012. This Court confirmed a Plan of Liquidation for CMH on August 7, 2013. According to the terms of the plan, Plaintiff CMH Liquidating Trust ("Trust") is vested with all causes of action that CMH held against former directors or officers of the hospital. Acting on this authority, the Trust filed this adversary proceeding on February 27, 2014 against former officers and directors of CMH alleging that their breach of fiduciary duties and/or negligence resulted in operating losses for CMH in fiscal years 2008 through 2011 totaling $16.4 million dollars.

### The Original Complaint

Defendants filed motions to dismiss or, in the alternative, for a more definite statement on Plaintiff's Original Adversary Complaint.[1] On September 29, 2017, after consideration of those motions, this Court ordered Plaintiff to amend its Complaint to include a more definite statement

---

[1] Defendants Brian Burns, Nancy Dextrom, Paul Ellinger, Carl Franzon, Michael Konicki, James McClurg, Daniel Nieland and Kenneth Pletcher did not file a motion to dismiss the Original Complaint.

regarding the basis for Defendants' alleged liability.[2]  (See ECF Nos. 170, 173,176,178 and 182.)

This Court found that Plaintiff's Original Complaint made no distinction between the various Defendants, their different roles, and the time periods that each Defendant was associated with CMH.  Further, with few exceptions, the Original Complaint did not make any allegations against any of Defendants individually, but merely directed every allegation against every Defendant. As a result, Defendants did not know which acts or omissions formed the basis for Plaintiff's claim of liability against them.  This Court stated that:

> Plaintiff's group pleading may be appropriate if Plaintiff breaks the Defendants into more identifiable groups of similarly-situated individuals-for example, groups that include individuals who served on the same board term or participated as a group in particular discreet acts or omissions.  But directing every allegation at every Defendant, regardless of the nature and period of their involvement, is not sufficient.

(ECF No. 178, p. 6.)

The Court did not address the substance of Defendants' argument that liability could not be imposed upon them under the business judgment rule or that certain Defendants were immune from liability as volunteer directors under the Michigan NonProfit Corporation Act ("NCA"), Mich. Comp. Laws §§ 450.2101-450.3192 (1983), but stated that "the Court recognizes that there may be applicable law or pleading requirements, in addition to the fundamental obligation [to sufficiently state a claim], which Plaintiff must address to maintain an action before this Court.  Plaintiff's Amended Complaint should contain allegations sufficient to satisfy any such law or requirements."  (ECF No. 176, p. 8.)

---

[2]  The only exception was as to Defendant Susan Eno.  This Court found that allegations against Eno regarding a conflict between her position as a board member of debtor CMH and her position as President of Citizens Bank, were sufficient to state a claim against her.  However, Plaintiff was ordered to amend the Original Complaint against Eno with regard to the other allegations in the Complaint.  (ECF No. 176,  p. 8.)

3

## The Amended Complaints

In response to this Court's order, Plaintiff filed Amended Complaints, each pertaining to an individual Defendant.[3] The Amended Complaints, like the Original Complaint, allege several instances where Defendants breached their fiduciary duties and/or were negligent with regard to acts or omissions which Plaintiff claims resulted in the financial collapse of CMH. Specifically, it is alleged that:

- Defendants failed to address losses from its employed physician practices.[4]

- Defendants failed to address billing and coding issues.

- Defendants failed to ensure adequate control over financial issues allowing the financial statements to overstate the hospital's revenues.

- Defendants approved the sale of the hospital's interest in a joint venture with Northern Michigan Hospital, VitalCare (a home health service company), in June 2009 for less than fair market value.

- Defendants allowed excessive senior management turnover to continue.

- Defendants allowed excessive compensation of Physician Board Members.

- Defendants were involved in allowing a conflict of interest to exist when CMH refinanced $4.3 million in long term debt with Citizens Bank because board member Susan Eno was the president of the bank.

- Defendants otherwise systematically and consistently failed to address the financial issues facing the hospital.

Although the Amended Complaints reference events dating back to at least 2003, Plaintiff counsel acknowledged at the hearing on the motions to dismiss the Amended Complaints that

---

[3] Some of the original Defendants were dismissed from the case by stipulation of the parties and were not served with an amended complaint. (ECF Nos. 213, 216 and 218).

[4] The hospital was allegedly losing millions of dollars a year employing physicians that did not have profitable practices rather than having those physicians manage their own practices independent of the hospital. (ECF No. 194, ¶ 33).

4

Plaintiff is only seeking damages for alleged breaches of fiduciary duties and/or negligence occurring from March 1, 2009 to March 1, 2012.[5]

Unlike the Original Complaint, the Amended Complaints include information regarding the position each Defendant allegedly held in relation to CMH (whether an officer, director or volunteer director) and the time period during which each Defendant was involved. Otherwise, the Amended Complaints contain substantially the same factual allegations as were made in the Original Complaint.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## III. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure Rule 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]"[6] In considering a motion to dismiss on this ground, a court must construe the complaint in a light most favorable to the plaintiff and accept as true all well-pleaded allegations. *Thompson v. Bank of Am. N.A.,* 773 F.3d 741, 750 (6th Cir. 2014) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[5] Defendants Eno, Lieder, and Ward argue that Plaintiff's claims are based upon a number of alleged breaches that occurred outside of the three year statute of limitations period set forth in Mich. Comp. Laws § 450.2541(5). (ECF No. 240). Plaintiff counsel's acknowledgement that Plaintiff is not seeking damages for breaches occurring before March 1, 2009, resolves this argument as the bankruptcy in this case was filed on March 1, 2012, and the adversary complaint was filed on February 27, 2014, within the two-year extension provided by 11 U.S.C. § 108(a)(2).

[6] Federal Rule of Civil Procedure 12(b)(6) is made applicable in this case by Federal Rule of Bankruptcy Procedure 7012.

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, the court need not accept as true "unwarranted factual inferences" or "conclusory allegations or legal conclusions masquerading as factual allegations." *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation omitted).

In order to survive a motion to dismiss, a complaint must present sufficient facts "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established where the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court, ruling on a motion to dismiss, "considers the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.,* 830 F.3d 376, 383 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as that for a motion to dismiss under Rule 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC.,* 477 F.3d 383, 389 (6th Cir. 2007). "All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law." *Hindel*, 875 F.3d at 346. (citations omitted). A complaint will only survive a Rule12(c) motion if it contains

"direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* at 346-347 (citation omitted).

## IV. <u>ANALYSIS</u>

### A. Do the Amended Complaints fail to state claims for breach of fiduciary duty and/or negligence against defendant officers and defendant directors?

#### 1. Law

Plaintiff alleges in the Amended Complaints that Defendant directors and officers breached fiduciary duties and were negligent in the performance of their responsibilities to CMH. In order to consider whether Plaintiff has stated a claim against Defendants on these grounds, it is necessary to consider the positions held by Defendants at CMH and their corresponding responsibilities. Pursuant to the NCA, "the business and affairs of a corporation shall be managed by or under the direction of its board." Mich. Comp. Laws. § 450.2501. Unless otherwise provided in the articles of incorporation or bylaws, it is the board of directors of a nonprofit corporation that elects or appoints corporate officers. Mich. Comp. Laws § 450.2531(1). A corporate officer "has the authority and shall perform the duties in the management of the corporation provided in the bylaws, or determined in accordance with a resolution or resolutions of the board that is not inconsistent with the bylaws." Mich. Comp. Laws § 450.2531(4).

> There is no presumption that the corporation president has any particular power to act on behalf of the corporation. *Vogt v. General Necessities Corp.*, 262 Mich. 409, 247 N.W. 707 (1933), *Wray v. Tilden Saw Co.*, 198 Mich. 461, 164 N.W. 545 (1917). The power or responsibility of a corporate officer can be established either by proof of express authorization from the board of directors, *W.F. Sheetz & Co. v. Commonwealth Commercial State Bank*, 282 Mich. 96, 275 N.W. 781 (1937), or by circumstantial evidence as to the manner in which the business has operated in the past. See *Shavalier v. Grand Rapids Bark and Lumber Co.,* 128

7

Mich. 230, 87 N.W. 212 (1901), *In re Seymour*, 83 Mich. 496, 47
N.W. 321 (1890).

*People v. Jasman*, 284 N.W.2d 496, 499 (Mich. Ct. App. 1979) (emphasis added).  *See also*

*Miller v. Herskovic*, No. 263250, 2006 WL 3498422, at * 3 (Mich. Ct. App. Dec. 5, 2006).

In Michigan, directors and officers of corporations are fiduciaries who owe a strict duty

of good faith in the performance of their responsibilities.  *Production Finishing Corp. v. Shields*,

405 N.W.2d 171, 174 (Mich. Ct. App. 1987). *See also Wallad v. Access BIDCO, Inc.*, 600

N.W.2d 664, 666 (Mich. Ct. App. 1999).  In the absence of fraud, an officer or director is liable

only for ordinary negligence. *Dykema v. Muskegon Piston Ring Co.*, 82 N.W.2d 467, 471 (Mich.

1957); *Estate of Detwiler v. Offenbecher*, 728 F. Supp. 103, 148 (S.D. N.Y. 1989) (applying

Michigan law).

The duty of care owed by officers and directors of a nonprofit corporation is codified in

the NCA, which states that:

> A director or officer shall discharge his or her duties as a director
> or officer including his or her duties as a member of a committee
> in the following manner:
>
> (a) In good faith.
>
> (b) With the care an ordinarily prudent person in a like position
>     would exercise under similar circumstances.
>
> (c) In a manner he or she reasonably believes is in the best
>     interests of the corporation.

Mich. Comp. Laws § 450.2541(1).[7]  The statute authorizes actions against officers and directors

if they fail to perform these duties. Mich. Comp. Laws § 450.2541(7); *Bittinger v. Tecumseh*

---

[7]  Prior versions of the statute also required that a director or officer of a nonprofit corporation "shall discharge the
duties of that position in good faith and with that degree of diligence, care, and skill which an ordinarily prudent
person would exercise under similar circumstances in a like position."  See 1987 Mich. Pub. Acts No. 170, § 1 (Eff.
Jan. 1, 1988) and 2009 Mich. Pub. Acts No. 88 (Eff. Sept. 10, 2009).

8

*Products Co.,* 123 F.3d 877, 888 (6th Cir. 1997) (referencing prior version of § 450.2541(5), which contained the same language as the current § 450.2541(7)).

Defendants, in their various motions to dismiss, assert that Plaintiff's Amended Complaints do not present sufficient facts to state a claim for breach of fiduciary duty and/or negligence that is plausible on its face. In response, Plaintiff contends that the Amended Complaints provide enough factual information to state claims that are facially plausible and therefore, Plaintiff should be permitted to go forward with discovery to develop the factual record to support its allegations. According to Plaintiff, the "crux" of the claims against Defendants is the failure to act to address the myriad problems at CMH and, although not every event alleged in the Amended Complaints relates to every Defendant, the allegations demonstrate that Defendants knew or should have known of the issues that needed to be addressed in order for CMH to survive. Furthermore, Plaintiff asserts that, in addition to the failure to act (nonfeasance), the Amended Complaints sufficiently state claims for improper actions taken by Defendants (malfeasance).

On the issue of whether the Amended Complaints can survive a Rule 12(b)(6) motion, the parties have discussed the case of *Bridgeport Holdings, Inc. v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548 (Bankr. D. Del. 2008). As in this case, the plaintiff liquidating trust in *Bridgeport Holdings* filed a complaint alleging that certain defendants breached their fiduciary duties to the debtor company. The complaint alleged counts against individuals who were both directors and officers ("D & O defendants") and alleged counts against four individuals to the extent they served as officers only ("Officer Defendants"). *Id.* at 554. The plaintiff argued that the D & O defendants breached their fiduciary duty by agreeing to the sale of company assets, in a rushed sale that allegedly resulted in a "grossly low price." *Id.* at 556.

9

The complaint also alleged a breach of fiduciary duties as to the Officer defendants. *Id.* at 572-73.

The *Bridgeport Holdings* Court found that the plaintiff had alleged sufficient facts to support the claims that the D & O defendants breached their fiduciary duty in the sale of assets "by abdicating crucial decision-making authority to [the restructuring professional], and then failing adequately to monitor his execution of a 'sell strategy.'" *Id.* at 565.

With regard to claims against the Officer Defendants, the court held that "[a] complaint fails to state a claim against an alleged officer for breach of fiduciary duty when it fails to allege facts demonstrating that (1) he took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in doing so." *Id.* at 573. The court then noted that the complaint before it failed to identify any offending acts the defendants took in their capacity as officers. *Id.* at 574. The court ultimately concluded that the complaint failed to state a claim against the officers stating that "since making the [a]ssets sale decision was not the officers' authority, I cannot understand how [the defendants] could have violated any fiduciary duty allegedly owed as officers." *Id.*

A similar result was reached in another case raised by the parties, *Official Comm. Of Unsecured Creditors v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527 (Bankr. Del. 2009). In *Fedders* adversary complaints were filed alleging breach of fiduciary duties by non-director, insider defendants and by outside directors.[8] The complaint targeted three decisions approved by the board of directors, two concerning employment and severance agreements ("change of control agreements") entered into with insider defendants and

---

[8] The non-director, insider defendants included the president and chief executive officer, the chief financial officer, an executive vice president, a senior vice president and a vice president of a foreign division. *Fedders*, 405 B.R. at 541 n.3.

another regarding the replacement financing agreements.  *Id.* at 537-38.  The Court granted the non-director, insider defendants' motions to dismiss stating:

> Drawing all reasonable inferences in favor of Plaintiff, the Court concludes that the complaint fails to plead any facts against the non-director, insider defendants that state a cause of action for breach of any fiduciary duty.  The "change of control" agreements were each approved by a disinterested majority of Fedders' board of directors, and there is no specific allegation that any of the non-director, insider defendants misled the board, failed to perform any assigned duties relating to the approval of these agreements, or otherwise acted improperly in convincing the board to adopt them—let alone any facts to support such an allegation.

*Id.* at 540-41 (footnote omitted).

As to the claims against the outside directors, the court noted that there may be a breach of fiduciary duty where a "director intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."  *Id.* at 540. (citation omitted).  The court decided that the plaintiff had not pled facts showing that the directors "intentionally abdicated their directorial duties in the face of a known duty to act."  *Id.* at 542.  However, it did find that, "Plaintiff has pled sufficient facts to support a claim for breach of the duty of care by Fedders' directors in connection with the loan transaction . . . .  The complaint pleads facts indicating that the directors approved the transaction with Lenders even though some due diligence which is typically undertaken by a borrower in the position of Fedders was not undertaken."[9]  *Id.*

The Court also notes another case, not raised by the parties, *Alberts v. Tuft (In re Greater Southeast Comm. Hosp. Corp. I)*, 333 B.R. 506 (Bankr. D.C. 2005).  In *Alberts*, the trustee of a liquidating trust brought an adversary proceeding against former officers and directors, among others, of the debtor Doctors Community Healthcare Corporation ("DCHC").  The adversary

---

[9] Although the complaint sufficiently stated a claim for breach of fiduciary duty, the court in *Fedders*, noting the existence of a provision in the articles of incorporation exculpating the directors from liability for such breach, found that dismissal was proper nonetheless. *Official Comm. Of Unsecured Creditors v. Goldman Sachs Credit, (Fedders)*, 405 B.R. at 542.

complaint alleged a breach of fiduciary duty against the former officers and directors in (1) using corporate jets instead of commercial airlines (the President and CEO of DCHC was the majority owner of the private airline) and (2) the forgiveness of loans made to DCHC executives. *Id.* at 525-26. In considering the allegations made against the corporate officers, the court agreed with the plaintiff that officers owed the same duties of care to the corporation as was owed by the directors. However, the court went on to state that:

> [T]he scope of those duties is restricted necessarily to those activities within each officer's control. Unless a specific defendant officer had the power to prevent DCHC from contracting with [the private airline company] or forgiving millions of dollars in loans to corporate executives, that officer cannot be held responsible for those actions. Simply being an officer of the company is not enough.

*Id.* at 526 (citation omitted).

## 2. Application of relevant case law to the Amended Complaints:

In order to determine whether Plaintiff has pled sufficient facts to state a claim for breach of fiduciary duty and/or negligence, the Court will consider the allegations in the Amended Complaints in the context of the relevant statutes and case law as to particular Defendants.[10]

Motion to Dismiss Amended Complaint as to Defendants Brian Dietz, Carolyn Riley, Fred Vitello and Michael Weeks (ECF No. 219):

**Brian Dietz ("Dietz")** was the interim CEO of CMH from May 2009 through April 2010. (Amended Complaint as to Brian Dietz, ECF No. 192). Most of the facts alleged in the Amended Complaint that specifically refer to Dietz place him in a favorable light, for example, reporting problems with the physician practice policy and excessive senior management turnover to the Board at the September 2009 meeting. ECF No. 192, ¶¶ 41, 45 and 72. The only factual

---

[10] Plaintiff's claim for breach of fiduciary duty and negligence are essentially the same. *See* Mich. Comp. Laws § 450.2541(1) which provides, in part, that an officer or director shall discharge his or her duties "with the care an ordinarily prudent person in a like position would exercise under similar circumstances."

allegation specifically critical of Dietz's performance is a quotation from a December 2009

email authored by board member Kathleen Lieder complaining with regard to Dietz:

> My understanding was that he was to make, in quick order, whatever staff or operational cuts were necessary to put CMH on a financially viable course. I just learned that that has not yet occurred because at the last Board meeting, he said that more cuts were needed. . . .Additionally, by June, *the Board gave him carte blanche to do whatever was necessary to get our bills out, once the Meditech fiasco was known. Despite having whatever resources he needed to fix that huge problem, the billing system is still a huge problem.*

ECF No. 192, ¶ 43 (emphasis added).

The Court finds that Plaintiff has stated a claim against Dietz for breach of fiduciary

duty/negligence as to the allegations that he knew of and failed to address billing and coding

issues at CMH. The above-quoted paragraph alleges facts, when read in a light most favorable to

Plaintiff, indicating that Dietz did have the power and responsibility to address the billing system

issues and did not do so during his time at CMH. *See Bridgeport Holdings*, 388 B.R. at 573;

*Greater Southeast Cmty. Hosp. Corp. I.,* 333 B.R. at 526.

However, the Court finds that Plaintiff has failed to state a claim as to the other

allegations of nonfeasance/misfeasance against Dietz. With regard to the alleged failure to

address losses from the employed physician practices, Plaintiff has plead that Dietz **did** bring the

issue to the Board's attention in June 2009, after he first arrived at CMH, and again in September

and December of 2009. ECF No. 192, ¶¶ 37-38, 41,47. There are no factual allegations made in

the Amended Complaint to support a finding that Dietz had the power to change the level of

support of the physician practices absent Board approval. In fact, Plaintiff has stated in its

Amended Complaint that the Board had "continued resistance to CEO Dietz's recommendation

that employed physician practices had to be dramatically cut for CMH to get back on financial

footing." ECF No. 192, ¶ 44. The specific facts alleged in the Dietz Amended Complaint are contradictory to the conclusory allegation that Dietz failed to address the losses from employed physician practices. Plaintiff has pleaded facts that defeat its own claim. See *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Groeb Farms, Inc., v. Alfred l. Wolff, Inc.,* No. 08-CV-14624, 2009 WL 500816, at *3 (E.D. Mich. Feb. 27, 2009). Likewise, Plaintiff has pled facts that contradict its claim that Dietz failed to address excessive levels of compensation given to physicians who were board members. There is no indication from the Amended Complaint that Dietz had the authority to determine compensation of such individuals and it is specifically alleged that he did raise his concern on the issue to legal compliance counsel for CMH, action for which he was criticized by at least one Board member. ECF No. 192, ¶¶ 74-76.

Plaintiff also fails to state a claim that Dietz failed to address inadequate financial controls at CMH. ECF No. 192, ¶ 65. Contrary to the conclusory allegation in Paragraph 65 of the Amended Complaint, no facts are pled alleging that Dietz was responsible for the financial statements or the financial controls. In addition, there are no facts pled in the Amended Complaint that Dietz was in any way responsible for senior management turnover and the allegation that he breached a fiduciary duty or was negligent in this regard (ECF No. 192, ¶ 65) does not rise above the level of speculation.

Plaintiff also fails to state a claim that Dietz breached a fiduciary duty or was negligent because he "participated in approving the sale of CMH's interest in VitalCare." There are no factual allegations that support a finding that Dietz, who began his tenure as CEO just a month before the Board approved the sale in June 2009, made any recommendations regarding the sale or was involved in any way in the decision making process. Plaintiff also alleges that the Board did not act in the best interests of CMH when it refinanced debt with Citizens in April 2008

while board member Eno was the president of the bank and made decisions after March 2009 that were influenced by the need to make monthly payments on the debt. Dietz was not employed at CMH at the time of the refinancing and, in any event, the allegations in this portion of the Amended Complaint refer only to the Board. ECF No. 192, ¶¶ 78-82. Likewise, the allegations in the Amended Complaint that Defendants "systematically and consistently" failed to address the financial issues facing the hospital make no reference to Dietz, but focus on the Board's failure to make a viable plan to address the losses at CMH. ECF No. 192, ¶¶ 83-93.

Based upon the foregoing, the only claim stated against Dietz is the claim regarding the failure to address billing issues. The remainder of the claims against Dietz are dismissed.

**Carolyn Riley ("Riley")** was a volunteer director of CMH from January 2011 to October 25, 2011. ECF No. 204, ¶ 12. Plaintiff alleges in its brief that she was an Interim CEO in 2010, but no such allegation was made in the Amended Complaint. Many of the allegations made in the Amended Complaint occurred before Riley was a director. Riley was not a director when the VitalCare sale was approved in June 2009. Additionally, with regard to the allegations of non-feasance in the Amended Complaint, such as failing to address billing and coding issues or employed physician practices, this Court finds that Plaintiff has failed to state a claim against Riley. The Amended Complaint makes factual allegations that the directors were warned of problems in these areas by various sources, yet failed to act. However, the alleged "warnings" cited in the Amended Complaint date to 2008-2010 before Riley was on the board. Based upon the allegations in the Amended Complaint, this Court cannot reasonably infer that Riley failed to act in the face of a known duty to act. *Fedders*, 405 B.R. at 540. Plaintiff has failed to state a claim against Riley.

**Fred Vitello ("Vitello")** was CFO of CMH from February 2010 to July 2010. ECF No. 205, ¶ 12. Aside from the conclusory allegations that he knew of the various financial issues at the hospital, but failed to address them, the only allegation in the Amended Complaint that mentions him specifically indicates that he informed the Board in May 2010 that certain financial statements significantly overstated the amounts received from insurance sources. ECF No. 205, ¶ 64. However, the email attached to the Amended Complaint as Exhibit 36 indicates that Vitello identified the problem and made adjustments to the manner in which the information was reported. ECF No. 186-38. Moreover, with regard to problems with the billing system, factual allegations in the Amended Complaint indicate that although there were problems accessing data from the system prior to Vitello's arrival, he resolved the issue and was able to access pertinent information. ECF No. 186-38. Thus, the factual allegations in the Complaint do not support a claim that Vitello breached a fiduciary duty or was negligent in this regard.

Finally, with regard to allegations that Vitello failed to address losses from employed physician practices, excessive senior management turnover, allowed excessive compensation of physician board members to continue and otherwise "systemically and consistently failed to address the financial issues facing the hospital," there are no allegations in the Amended Complaint that Vitello mislead the board in any way or had any power or control over these issues. *See People v. Jasman*, 284 N.W.2d at 499; *Fedders*, 405 B.R. at 540-41; *Greater Southeast Cmty. Hosp.Corp. I.,* 333 B.R. at 526. Plaintiff has failed to state a claim against Vitello.

**Michael Weeks ("Weeks")** was an officer at CMH from June 17, 2009 until October 23, 2009. Weeks was apparently a CFO. ECF No. 208, ¶ 12. No specific mention is made as to

Weeks in the Amended Complaint except for the conclusory allegations that he knew of the purported problems and failed to address them.

With regard to the instances of malfeasance, Plaintiff fails to state a claim that Weeks breached a fiduciary duty or was negligent because he participated in approving the sale of CMH's interest in VitalCare. There are no factual allegations that support a finding that Weeks, who became an officer the same month that the Board approved the sale, made any recommendations regarding the sale or was involved in any way in the decision making process. Plaintiff also alleges that the Board did not act in the best interests of CMH when it refinanced debt with Citizens while board member Eno was the president of the bank and later made decisions influenced by the need to make monthly payments on the debt. Weeks was not employed at CMH at the time of the refinancing and, in any event, the allegations in this portion of the Amended Complaint refer only to the Board. ECF No. 208, ¶¶ 78-82.

As to the remaining allegations, there is no evidence that Weeks had any power or control over decisions relating to employed physician practices and senior management turnover. *See People v. Jasman*, 284 N.W.2d at 499; *Fedders*, 405 B.R. at 540-41; G*reater Southeast Cmty. Hosp. Corp. I.,* 333 B.R. at 526. Additionally, given the short time, four months, that Weeks was employed at CMH and the lack of any specific allegation as to his conduct while employed, this Court is unable to draw a reasonable inference that Weeks is liable for the other alleged instances of non-feasance.

The Court concludes that Plaintiff has not stated a claim against Weeks.

<u>Motion to Dismiss as to Defendants Susan Eno, Kathleen Lieder and John Ward (ECF No. 240)</u>

**Susan Eno ("Eno")** was a volunteer director of CMH from July 2003 until August 31, 2011. ECF No. 194, ¶ 12. This Court previously found that allegations against Eno regarding a

conflict between her position as a board member of debtor CMH and her position as President of Citizens Bank, were sufficient to state a claim against her. The Court now finds that the Amended Complaint is sufficient to state a claim against her with regard to the other allegations of malfeasance/nonfeasance.

Eno was a member of the Board at the time of the VitalCare sale. Plaintiff sufficiently alleged a breach of fiduciary duty with regard to the sale for less than fair market value. *See Edelman v. Fruehauf Corp.,* 798 F.2d 882, 886-887 (6th Cir. 1986) (directors have the duty to get the best price at a sale of a company). *See also Pittiglio v. Mich. Nat'l Corp.*, 906 F. Supp. 1145, 1154 (E.D. Mich. 1995) (directors have a fiduciary obligation to ensure maximization of a company's value at sale.) Additionally, the allegations that the Board did not take action to address billing problems, excessive management turnover, employed physician practices, problems with financial statements, and excessive compensation of physician board members are sufficient to state a claim that Eno, as a director charged with the management of the affairs of CMH, failed to act in the face of a known duty to act with regard to the remaining allegations in the Amended Complaint. *Fedders*, 405 B.R. at 540.

**Kathleen Lieder ("Lieder")** was a volunteer director of CMH from July 2003 to July 2011, essentially the same period as Eno was a member of the Board. ECF No. 198, ¶12. Lieder was on the Board at the time of the VitalCare sale decision in June 2009. Plaintiff has sufficiently alleged facts that Lieder breached her fiduciary duty and/or was negligent with regard to the Board's approval of this transaction. *Pittiglio v. Michigan Nat'l Corp.,* 906 F. Supp. at 1154. Plaintiff has also sufficiently alleged that Lieder, as a director, did not act in the best interests of CMH in making decisions after March 2009, "in part, to allow the Hospital to continue to make monthly payments to Citizens, as Citizens was under-secured and at risk of

losing money if the Hospital defaulted on the long-term debt with Citizens." ECF No. 198, ¶ 79. Additionally, Plaintiff has sufficiently alleged facts that Lieder, as a director, failed to act in the face of a known duty to act with regard to the remaining allegations in the Amended Complaint. *Fedders*, 405 B.R. at 540.

**John Ward ("Ward")** was a volunteer director from April 3, 2001 to 2003 and then from July 1, 2008 to December 2011. ECF No. 206, ¶ 12. The same analysis as to the claims against Leider applies to Ward and thus, Plaintiff's Amended Complaint is sufficient to state claims against Ward.

Motion to Dismiss Amended Complaint as to Gary Lewins (ECF No. 241)

**Gary Lewins ("Lewins")** was CFO from July 11, 2011 until sometime before March 1, 2012 when CMH filed for bankruptcy. ECF No. 197, ¶ 12. Aside from the paragraph naming Lewins' title and the dates of his employment, there are no specific allegations in the Amended Complaint regarding him. There are no allegations in the Amended Complaint that Lewins had the authority to make decisions regarding employed physician practices, management turnover, or compensation of Physician Board Members. *See Bridgeport Holdings*, 388 B.R. at 573; *Greater Southeast Cmty. Hosp. Corp. I.,* 333 B.R. at 526. It has not even been alleged that Lewins, in his short tenure as CFO had the power and responsibility to address the billing and coding issues. It cannot be presumed that as CFO, Lewins would be responsible for these issues, *Jasman*, 284 N.W.2d at 499. Moreover, the factual allegations in a Complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, while the Amended Complaint sets forth facts with regard to problems with inadequate financial controls in 2009 and 2010 before Lewins became CFO, it does not specifically allege that these

19

problems occurred during Lewins' employment. Plaintiff has failed to state a claim against Lewins.

<u>Motion to Dismiss Amended Complaints as to William Borgerding, Timothy Burandt, Marvin Coy, David Oram and Donald Watson (ECF No. 242)</u>

**William Borgerding ("Borgerding")** was a volunteer director from July 2008 until December 2010. ECF No. 187, ¶ 12. **Marvin Coy ("Coy")** was a director from 2005-2012. ECF No. 190, ¶ 12. **David Oram ("Oram")** was a director from February 2005 to May 26, 2009. ECF No. 201, ¶ 12. **Donald Watson ("Watson")** was a director from January 2006 to December 2009. ECF No. 207, ¶ 12. **Timothy Burandt ("Burandt")** was a board member physician from September 2000 until October 2009. ECF No. 188, ¶ 12. Plaintiff alleges that Coy, Oram, Watson and Burandt were not volunteer directors. It is further alleged that Burandt's compensation was in excess of that of other physicians employed by the hospital.

Borgerding, Coy, Watson and Burandt were members of the Board at the time of the VitalCare sale. Plaintiff has sufficiently alleged facts that they breached their fiduciary duties and/or were negligent with regard to the Board's approval of this transaction. *Pittiglio*, 906 F. Supp. at 1154. Plaintiff has not stated a claim against Oram as to the VitalCare sale because he was not on the Board at the time.

Plaintiff has also sufficiently alleged that Borgerding, Coy, Oram, Watson and Burandt as directors, did not act in the best interests of CMH in making decisions, after March 2009, "in part, to allow the Hospital to continue to make monthly payments to Citizens, as Citizens was under-secured and at risk of losing money if the Hospital defaulted on the long-term debt with Citizens." Additionally, Plaintiff has sufficiently alleged facts that all Defendants breached their

fiduciary duty and/or were negligent by failing to act in the face of a known duty to act with regard to the remaining allegations in the Amended Complaint.[11] *Fedders*, 405 B.R. at 540.

<u>Motion to Dismiss John Parigi (ECF No. 243)</u>

**John Parigi ("Parigi')** was an officer of the hospital from July 2010 to August 2011. The Amended Complaint does not specify which office he held. ECF No. 202, ¶ 12. Parigi was not an officer at the time of the VitalCare sale and no allegations regarding the sale were made in the Amended Complaint against him. Aside from general conclusory allegation that Parigi was an officer during 2010 and 2011, knew of the various issues facing the hospital and "failed to adequately address them," ECF No. 202, ¶ 87, the Amended Complaint contains no factual allegations that Parigi had the responsibility or authority to take any action. *See Jasman*, 284 N.W.2d at 499; *Fedders*, 405 B.R. at 540-41; *Greater Southeast Cmty. Hosp. Corp. I.,* 333 B.R. at 526. Accordingly, the Court finds that the Amended Complaint fails to state a claim against Parigi for breach of fiduciary duty and/or negligence.

<u>Motion to Dismiss Brian Burns, Nancy Dextrom, Paul Ellinger, Carl Franzon, Michael Konicki, James McClurg, Daniel Nieland and Kenneth Pletcher[12] (ECF No. 244)</u>

**Brian Burns ("Burns")** was a volunteer director of CMH from July 2003 to 2012. ECF No. 189, ¶ 12. **Nancy Dextrom ("Dextrom")** was a volunteer director from January 2007 to 2012. ECF No. 191, ¶ 12. **Carl Franzon ("Franzon")** was a volunteer director from January 1, 2008 to 2012. ECF No. 195, ¶ 12. **James McClurg ("McClurg")** was a volunteer director from May 2005 to February 2012. ECF No. 199, ¶ 12. **Daniel Nieland ("Nieland")** was a volunteer director from 2011 to 2012. Nieland was not a director when the VitalCare Sale occurred. ECF

---

[11] The Court notes that Oram was a director until May 26, 2009. As Plaintiff is limited to seeking damages for conduct of the Board after March 1, 2009, it follows that any liability as to Oram would be limited to actions or non-actions attributable to Oram from March 1, 2009 to May 26, 2009.

[12] These Defendants filed answers to the Amended Complaint and therefore are seeking dismissal under Federal Rule of Bankruptcy Procedure 7012(c) (motion for judgment on the pleadings).

No. 200, ¶ 12. **Kenneth Pletcher ("Pletcher")** was a volunteer director from January 2007 to January 20, 2011. ECF No. 203, ¶ 12. **Paul Ellinger ("Ellinger")** was a volunteer director from approximately 2000 through 2009. ECF No. 193, ¶ 12. **Michael Konicki ("Konicki")** was a volunteer director from approximately 1980 through 2009. ECF No. 196, ¶ 12.

As was noted previously, Plaintiff is only seeking damages for alleged breaches of fiduciary duties and/or negligence occurring from March 1, 2009 to March 1, 2012. It is conceded that actions occurring before March 1, 2009 are outside of the applicable statute of limitations period. Accordingly, the Court finds that Plaintiff has failed to state a claim as to Defendants Ellinger and Konicki. The Amended Complaints for these Defendants allege that they were directors for a period ending sometime in 2009. The Amended Complaint does not specify when in 2009 Ellinger and Konicki ceased being directors. If it was before March 1, 2009, then, as Plaintiff has acknowledged, the claims against these Defendants would be barred. On the other hand, if it was March 1, 2009 or after, the claims would not be time barred. It is not enough that a complaint allege facts that "merely create a *suspicion* of a legally cognizable right of action." *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 520 (6th Cir. 2008) (citation omitted). "The allegations must be enough to 'raise a right of relief above the speculative level' and state a claim that is 'plausible on its face.'" *Id.* (citation omitted). Without knowing when in 2009 Ellinger and Konicki acted as directors, it would be mere speculation for this Court to conclude that Plaintiff has stated a claim as to their actions or inactions with regard to the financial condition of CMH.

With regard to Nieland, the Court finds that the same reasoning applicable to director Riley is applicable to director Nieland. Nieland was not a director at the time of the VitalCare sale and therefore cannot be responsible for a claim arising out of that sale. With regard to the

allegations of non-feasance in the Amended Complaint such as failing to address billing and coding issues or employed physician practices, this Court finds that dismissal is proper. The Amended Complaint sets forth factual allegations that the directors were warned of problems in these areas by various sources, yet failed to act. However, the alleged "warnings" cited in the Amended Complaint date from 2008-2010 before Nieland was on the board. Based upon the allegations in the Amended Complaint, this Court cannot reasonably infer that Nieland failed to act in the face of a known duty to act. *Fedders*, 405 B.R. at 540.

As to the remaining Defendants, Burns, Dextrom, Franzon, McClurg, and Pletcher, the Court concludes that Plaintiff has stated a claim for breach of fiduciary duty and/or negligence. These Defendants were members of the Board at the time of the VitalCare sale. Plaintiff has sufficiently alleged facts that they breached their fiduciary duties and/or were negligent with regard to the Board's approval of this transaction. *Pittiglio*, 906 F. Supp. at 1154. Plaintiff has also sufficiently alleged that Burns, Dextrom, Franzon, McClurg, and Pletcher, as directors, did not act in the best interests of CMH in making decisions, after March 2009, "in part, to allow the Hospital to continue to make monthly payments to Citizens, as Citizens was under-secured and at risk of losing money if the Hospital defaulted on the long-term debt with Citizens." Additionally, Plaintiff has sufficiently alleged facts that these Defendants, breached their fiduciary duty as directors and/or were negligent by failing to act in the face of a known duty to act with regard to the remaining allegations in the Amended Complaint. *Fedders*, 405 B.R. at 540.

**B. Are Defendants protected from liability according to the "Business Judgment Rule?"**

Having determined that Plaintiff has alleged sufficient facts to state a claim for breach of fiduciary duty and/or negligence as to Defendants Dietz, Eno, Lieder, Ward, Borgerding, Coy,

Oram, Watson, Burandt, Burns, Dextrom, Franzon, McClurg, and Pletcher, the next question is whether, as Defendants assert, their actions or lack thereof, are not reviewable in this Court under the "business judgment rule."

The Michigan Supreme Court has stated that "it is not the function of the court to manage a corporation." *Reed v. Burton*, 73 N.W. 2d 333, 336 (Mich.1955). "So long as the directors of a corporation control its affairs within the limits of the law, matters of business judgment and discretion are not subject to judicial review." *Id.* at 335 (internal quotation omitted). "A court should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs." *Gowthorpe v. Page (Matter of Estate of Butterfield)*, 341 N.W.2d 453, 459 (Mich. 1983). "In the absence of bad faith or fraud, a court should not substitute its judgment for that of corporate directors . . .". *Id.* at 458.

This business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled, in part, on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[13] *See also In re Dalen*, 259 B.R. 586, 609 (Bankr. W.D. Mich. 2001)*; Detwiler* 728 F. Supp at 148. The burden is on the party challenging the business decision to establish facts rebutting the presumption. *Aronson*, 473 A.2d at 812; *Detwiler*, 728 F. Supp. at 148.

There are limitations on the application of the business judgment rule. For instance, the protection of the business judgment rule can only be claimed by disinterested directors. *Aronson*, 473 A.2d at 812; *Priddy v. Edelman*, 883 F.2d 438, 444 (6th Cir. 1989) ("If the board of directors

---

[13] The decision in *Aronson v Lewis*, 473 A.2d 805, 812 (Del. 1984), overruled, in part, on other grounds by *Brehm v Eisner*, 746 A.2d 244 (Del. 2000) is frequently cited by courts from various jurisdictions regarding issues involving the application of the business judgment rule.

is disinterested, has acted in good faith and with due care, its decision in the absence of an abuse of discretion will be upheld as a proper exercise of business judgment.")  (citation omitted). Additionally, the business judgment rule:

> [o]perates only in the context of director action. Technically speaking, it has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act.  But it also follows that under applicable principles, a conscious decision to refrain from acting may nonetheless be a valid exercise of business judgment and enjoy the protections of the rule.

*Aronson*, 473 A.2d at 813 (footnote omitted).

A plaintiff must plead sufficient facts in the complaint to overcome the business judgment rule.[14]  *Churella v. Pioneer State Mut. Ins. Co.*, 671 N.W.2d 125, 132 (Mich. Ct. App. 2003). *See also Bormuth v. Grand River Envtl. Action Team*, No. 321865, 2015 WL 6439007, at * 2 n.1 (Mich. Ct. App. Oct. 22, 2015); *Coppola v. Manning*,  No. 323994, 2015 WL 7288050, at * 5 n.3 (Mich. Ct. App. Nov. 17, 2015).   In the present case, the Court finds that Plaintiff has alleged conduct sufficient to avoid application of the rule.  A majority of the allegations in the Amended Complaint reference Defendant directors' failure to act even in the face of information that put them on notice of the need to take action.  The business judgment rule affords no protection where directors have abdicated their authority or have simply failed to act, absent a

---

[14]   The Court recognizes that some courts from other jurisdictions have determined that the application of the business judgment rule is "highly fact dependent" and therefore, inappropriate for consideration in a motion to dismiss, *F.D.I.C. v. Baldini*, 983 F.Supp. 2d 772-83 (S.D. W.Va. 2013) (collecting cases), while other courts have permitted its application at the motion to dismiss phase. *F.D.I.C. v Spangler*, 836 F. Supp. 2d. 778, 791 (N.D. Ill. 2011).  ("[A]t the motion to dismiss phase it stands to reason that the burden of proof is on the party challenging a corporate decision made by a director to present allegations that rebut the presumption created by the business judgment rule.")  However, the decision in *Churella v. Pioneer State Mut. Ins. Co.*, 671 N.W.2d 125, 132 (Mich. Ct. App. 2003) represents the law in Michigan on the subject.  *See City of Cinncinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 478 (6th Cir. 2017); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (Where a state supreme court has yet to resolve an issue, the federal court will follow state appellate court decisions, including unreported decisions, unless convinced by other persuasive data that the highest court of the state would decide differently.).

conscious decision not to do so.[15]  *Aronson*, 473 A.2d at 813.  Plaintiff also alleges conduct with regard to paid physician services and the loan with Citizens Bank from which it may be inferred, especially as to Eno and Burandt, that decisions on these issues were not made by disinterested directors.  *Id.* at 812.

With regard to the sale of VitalCare, Plaintiff has alleged that the board "approved the quick sale of CMH's 50-percent interest in VitalCare . . . for approximately $2.7 million-much less than VitalCare was actually worth."  (ECF No. 194, ¶ 68).  It is asserted that VitalCare was sold in a quick sale to make payroll and to avoid addressing the underlying financial issues at the Hospital and "was not in the best interest of the Hospital." (ECF No. 194, ¶¶ 69-70).  These allegations are sufficient to plead facts in avoidance of the business judgment rule. *See Bridgeport Holdings*, 388 B.R. at 570.

### C.  Are Defendants who were volunteer directors immune from liability?

Plaintiff has alleged in its Amended Complaints that Defendants Riley, Eno, Lieder, Ward, Borgerding, Burns, Dextrom, Ellinger, Franzon, Konicki, McClurg, Nieland and Pletcher were volunteer directors of CMH.  These Defendants assert that as volunteer directors they are immune from liability under the terms of exculpatory provisions in CMH's amended articles of incorporation.  The NCA sets forth provisions that are permissible in the articles of incorporation of a nonprofit corporation such as CMH.  Specifically, it states that:

---

[15]  The Court agrees with Plaintiff that it is questionable whether the business judgment rule applies to the actions of corporate officers such as Defendant Dietz.  The business judgment rule follows from the central premise that in Michigan, and elsewhere, directors, rather than shareholders, manage the business of a corporation and that, "[t]his concentration of decision-making authority enhances a corporation's ability to act quickly and efficiently." *In re Consumers Power Co. Derivative Litigation*, 132 F.R.D. 455, 464  (E.D. Mich. 1990).  The rule "protects directors from undue fear of personal liability and encourages the innovation, quick decision, and occasional risk-taking that are important to a corporation's success.  It also protects directors from the harassment of litigators who might otherwise contest ordinary business decisions." *Id.* (quotation and citation omitted).

It is arguable that the premise that underlies the business judgment rule does not apply to corporate officers who, as explained previously, operate under the authority of the board of directors.  In any event, it is not necessary for this Court to answer the question as it finds that Plaintiff, alleging the failure to act on the part of Dietz with regard to the billing issues, has pled facts in avoidance of the business judgment rule.

(1) The articles of incorporation may contain any provision that is not inconsistent with this act and not expressly prohibited by any other statute of this state, including, but not limited to, any of the following:

. . . .

(c) A provision that eliminates or limits a director's or volunteer officer's liability to the corporation, its shareholders, or its members for money damages for any action taken or any failure to take any action as a director or volunteer officer, except liability for any of the following:

(i) The amount of a financial benefit received by a director or volunteer officer to which he or she is not entitled.

(ii) Intentional infliction of harm on the corporation, its shareholders or members.

(iii) A violation of section 551.

(iv) An intentional criminal act.

(v) A liability imposed under section 497(a).

Mich. Comp. Laws § 450.2209(1)(c) (footnotes omitted).

Further, the statute provides that:

If the articles of incorporation contain a provision that eliminates the liability of a volunteer director or volunteer officer that was filed before the effective date of the amendatory act that added this subsection, that provision is considered to eliminate the liability of a director or voluntary officer under subsection (1)(c).

Mich. Comp. Laws § 450.2209(2) (footnote omitted).

Defendants claim that they are entitled to immunity under Mich. Comp. Laws § 450.2209(1)(c) because Article XI of the articles on incorporation, as amended in 1988, contains a provision limiting liability consistent with subsection (1)(c) and Plaintiff's Amended Complaint does not contain any factual allegations to overcome this immunity provision.

Defendants Burandt, Coy, Oram, and Watson do not argue that this provision applied to them presumably because they were not alleged to be volunteer directors. ECF No. 242. Defendants also assert that movants are immune from liability pursuant to subsection (1)(d) and immune from liability under subsection (1)(e) because the hospital assumed liability, and Plaintiff has not made any allegations of lack of good faith, that Defendants acted outside of their authority, that Defendants were grossly negligent, or that Defendants committed an intentional tort.

Plaintiff argues that the exculpatory clause does not apply in this case because defendants are referencing a version of Mich. Comp. Laws § 450.2209(1)(c) that did not apply at the time the Original Complaint was filed in this case. At the time of the Original Complaint, Mich. Comp. Laws § 450.2209(1)(c) did not allow a corporation to limit liability for, among other things, gross negligence.[16]

A defense under an exculpatory clause permitted under § 450.2209 is properly considered in the context of a motion to dismiss. *See Bridgeport Holdings*, 388 B.R. at 567. This Court notes that the amendment to Article XI of CMH's articles of incorporation was attached to Defendants' motion to dismiss and not included with the Amended Complaint in this case. ECF No. 219, Exhibit 6. However, the amended article was filed with the Michigan Department of Commerce and is a matter of public record. This Court is permitted to take judicial notice of

---

[16] The prior statute stated that the articles of incorporation may contain a provision that eliminates the personal liability of a volunteer director to the corporation for a breach of fiduciary duty but may not eliminate liability for:

> (i) A breach of the director's or officer's duty of loyalty to the corporation, its shareholders, or its members.
> (ii) Acts or omissions not in good faith that involve intentional misconduct or a knowing violation of law.
> (iii) A violation of section 551(1).
> (iv) A transaction from which the director or officer derived an improper personal benefit.
> (v) An act or omission occurring before the effective date of the provision granting limited liability.
> (vi) An act or omission that is grossly negligent.

1996 Mich. Pub. Acts No. 397 § 1 (Eff. Oct. 9, 1996) (footnote omitted).

public records and, therefore, may consider the contents of the amended articles of CMH "without converting a motion to dismiss into a motion for summary judgment." *Overall v Ascension*, 23 F. Supp. 3d 816, 824-25 (E.D. Mich. 2014).

The amendment to Article XI states:

> A volunteer director (as defined in the Michigan Non-Profit Corporation Act) of this Corporation shall not be personally liable to this Corporation or its shareholders or members, as the case may be, for the monetary damages for breach of the director's fiduciary duty, provided however that this provision shall not eliminate or limit the liability of the director for any of the following:
>
> (i)  A breach of the director's duty of loyalty to the Corporation or its shareholders or members, as the case may be.
>
> (ii)  Acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of the law.
>
> (iii) A violation of Section 551(1) of the Michigan Non-Profit Corporation Act.
>
> (iv) A transaction from which the director derived an improper personal benefit.
>
> (v) An act or omission occurring before the effective date of the filing of this amendment.
>
> (vi) An act or omission that is grossly negligent.

(ECF No. 219, Exhibit 6).  The amendment to Article XI also states:

> If the Michigan Non-Profit Corporation Act is amended to authorize corporate action further eliminating or limiting the personal liability of volunteer directors, *then the liability of a volunteer director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Michigan Non-Profit Corporation Act, as so amended.*

*Id.* (emphasis added).

According both to the terms of NCA, Mich. Comp. Laws § 450.2209(2), and the amendment to Article XI of CMH's articles of incorporation, the liability of the volunteer

directors of CMH for the conduct at issue in this case is limited by the current provisions of § 450.2209(1)(c). That section permits exculpatory clauses that limit liability of volunteer directors "for any action taken or any failure to take any action" except as to liability for: an amount of a financial benefit received by a director for which he or she is not entitled; intentional infliction of harm on the corporation, its shareholders and members; a violation of Mich. Comp. Laws § 450.2551; for an intentional criminal act; or for liability imposed under Mich Comp. Laws § 450.2497. See Mich. Comp. Laws § 450.2209(1)(c).

Contrary to Plaintiff's assertion, the Michigan Legislature has made clear in the language of subsection (2) that exculpatory provisions, such as the one at issue in this case, filed before the statute was amended in 2015, are considered to eliminate liability under subsection (1)(c). Under Michigan law, the question of whether a statute is to be applied retroactively is a question of legislative intent. *KIA Motors America, Inc., v. Gassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 739 (6th Cir. 2013) (citing *Frank W. Lynch & Co. v. Flex Techs., Inc.,* 624 N.W.2d 180, 182 (Mich. 2001)). The intent of the Legislature is determined first by the words of the statute itself. "When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Kemp v. Farm Bureau Gen. Ins. Co. of Mich.*, 901 N.W.2d 534, 538-39 (Mich. 2017) (quoting *Madugula v. Taub*, 853 N.W.2d 75 (Mich. 2014)). Accordingly, the Amended Complaint must allege sufficient facts to defeat the exculpatory provisions as limited by subsection (1)(c).

Plaintiff has not pled facts alleging intentional infliction of harm or intentional criminal acts on the part of the volunteer directors. Mich. Comp. Laws § 450.2209(1)(c)(ii) and (iv). There are no factual allegations that Defendant volunteer directors violated Mich. Comp. Laws §

450.2551 or § 450.2497(a).[17]  Additionally, Plaintiff has not pled facts that support a claim that

Defendant volunteer directors received a financial benefit to which he or she is not entitled.

Mich. Comp. Laws § 450.2209(1)(c)(i).   The closest Plaintiff comes is the assertion that

volunteer director Eno was involved on a conflict of interest when as a board member she

participated in the refinancing of long term debt with Citizens where she was employed as

president. Specifically it is alleged that "Ms. Eno influenced the decisions of the Board to the

benefits of her employer, Citizens, and to the detriment of CMH."  ECF No. 194, ¶ 80.  While

this allegation may be sufficient to allege a breach of fiduciary duty, it is not enough to support a

claim that Eno received a financial benefit to which she was not entitled.  Currently, there are no

factual allegations that Eno herself reaped any financial benefit from the refinancing transaction

and any such conclusion reached from the allegations in the Amended Complaint would be mere

speculation.  But since Eno may have received a financial benefit through Citizens, the Court

will allow Plaintiff to engage in discovery for 90 days to develop this possibility and reserve to

Eno the right to renotice her motion to dismiss.

It is also argued that Defendant volunteer directors are immune from liability pursuant to

Mich. Comp. Laws § 450.2209(1)(d) and (e).  Subsection (1)(d) provides that the articles of

incorporation may contain:

> For a corporation whose purposes, structures, and activities are
> exclusively those described in section 501(c)(3) of the internal
> revenue code of 1986, 26 USC 501, a provision that the
> corporation assumes all liability to any person *other than the
> corporation, its shareholders, or its members* for all acts or
> omissions of a volunteer director occurring on or after January 1,
> 1988 incurred in the good faith performance of the volunteer
> director's duties.

---

[17]     Mich. Comp. Laws §450.2551 references a director's liability arising out of the declaration of a dividend, the making a distribution to shareholders or the making a loan to a director or officer.  Mich. Comp. Laws § 450.2497 concerns fees and expenses that may be awarded in a derivative action.

Mich. Comp. Laws § 450.2209(1)(d) (emphasis added). The 1988 amendment to Article XI of the articles of incorporation contains a provision consistent with subsection (1)(d). (ECF No. 219, Exhibit 6). However, the language of both indicates that the liability assumed by the corporation is liability of the volunteer director to any person *other than the corporation*. The liability asserted in this case by Plaintiff is a breach of fiduciary duty/negligence owed by the volunteer directors *to the corporation*. Subsection(1)(d) is not applicable in this case.

It is also asserted that Defendant volunteer directors are immune from liability pursuant to Mich. Comp. Laws § 450.2209(1)(e) which states that articles of incorporation may contain a provision assuming liability for "all acts or omissions of a volunteer director" if the volunteer director was acting or reasonably believed that he or she was acting within the scope or her authority, the volunteer was acting in good faith, the volunteer's conduct did not amount to gross negligence or willful or wanton misconduct, the conduct was not an intentional tort and the conduct was not a tort arising out of the ownership, maintenance, or use of a motor vehicle. Subsection (1)(e) permits, but does not require, a nonprofit corporation to include such a provision. The amendment to Article XI of CMH's articles of incorporation provided to this Court does not contain the kind of provision allowed by subsection (1)(e) and thus, the Court cannot conclude that any immunity is afforded under that subsection to Defendant volunteer directors.

## V. **CONCLUSION**

<u>Motion to Dismiss as to Dietz, Riley, Vitello and Weeks (ECF No. 219)</u>:

On the basis of the foregoing, this Court **grants** the motions to dismiss as to Defendants Riley, Vitello and Weeks. The Court **grants** the motion to dismiss the claims against Defendant

Dietz on all claims except the claim that Dietz failed to address billing issues. The Court **denies** the motion as to that issue.


### Motion to Dismiss as to Eno, Lieder and Ward (ECF No. 240):

For the reasons stated above, the Court **grants** the motions to dismiss as to Lieder and Ward. These Defendants were volunteer directors and excluded from liability under the exculpatory clause in Amended Article XI. The motion to dismiss of Eno is **denied without prejudice** and Eno may renew her motion to dismiss after discovery is completed on the limited issue of a benefit she may have received.


### Motion to Dismiss as to Lewins (ECF No. 241):

This Court **grants** Lewins' motion to dismiss for the failure to state a claim.


### Motion to Dismiss as to Borgerding, Burandt, Coy, Oram and Watson (ECF No. 242):

Borgerding was a volunteer director and is excluded from liability under the exculpatory clause in Amended Article XI. His motion to dismiss is **granted.**

Burandt, Coy, Oram and Watson were allegedly non-volunteer directors. Their motions are **denied** as Plaintiff has stated a claim against them and they are not immune under the exculpatory clause.


### Motion to Dismiss as to John Parigi (ECF No. 243):

The Court **grants** Parigi's Motion to Dismiss for the reasons previously explained.

<u>Motion to Dismiss as to Burns, Dextrom, Ellinger, Franzon, Konicki, McClurg, Nieland and Pletcher (ECF No. 244)</u>:

The Court **grants** the motions of these Defendants for the reasons previously explained in this Opinion including the application of the exculpatory provision applicable to volunteer directors in Amended Article XI of the CMH articles of incorporation.

**Signed on August 02, 2018**



**/s/ Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**