UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION (BAY CITY)

In re:

| | |
|---|---|
| COMMUNITY MEMORIAL HOSPITAL, d/b/a Cheboygan Memorial Hospital,<br><br>  Debtor,<br>_____/ | Case No. 12-20666<br>Chapter 11<br><br>Judge Daniel S. Opperman |
| CMH LIQUIDATING TRUST,<br><br>  Plaintiff,<br><br>v.<br><br>TED ANDERSON; WILLIAM BORGERDING; TIMOTHY BURANDT; BRIAN BURNS; HOLLY CAMPA; BARBARA CLIFF; EUGENE COOLEY; DAVID COURTNEY; MARVIN COY; LEIF DAHLEEN; NANCY DEXTROM; BRIAN DIETZ; PAUL ELLINGER; SUSAN ENO; JOHN EVERETT; CARL FRANZON; MICHAEL KONICKI; JAMES LAUGHLIN; GARY LEWINS; KATHLEEN LIEDER; JAMES MCCLURG; DANIEL NIELAND; DAVID ORAM; JOHN PARIGI II; KENNETH PLETCHER; CAROLYN RILEY; SHARI SCHULT; FRED VITELLO; JOHN WARD; DONALD WATSON; MICHAEL WEEKS, and HAL YOST,<br><br>  Defendants.<br>_____/ | Adversary Proceeding No. 14-02020 |

# **OPINION**

Plaintiff CMH Liquidating Trust ("the Trust") brings this Motion to Alter or Amend ("Motion to Amend") this Court's "Order Granting in Part, And Denying, In Part, Defendants' Motion to Dismiss the Amended Complaint" dated August 13, 2018 (ECF No. 278). For the reasons explained below, this Court denies, in part, and grants, in part, the Motion to Amend.

### **STANDARD FOR MOTION TO AMEND**

Plaintiff brings this motion pursuant to "Federal Rule of Bankruptcy Procedure 7059(e)." (Plaintiff's Motion to Alter or Amend Order - ECF No. 282). However, there is no such rule and it appears that Plaintiff intends to rely on Federal Rule of Bankruptcy Procedure 9023 which incorporates Federal Rule of Civil Procedure 59 into bankruptcy practice. Plaintiff also references Rule 9024-1(a) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan which governs motions for reconsideration.

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment. A Rule 59(e) motion may be granted: (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006). The granting of a motion brought pursuant to Rule 59(e) "is an extraordinary remedy and should be used sparingly" because Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Hamerly v. Fifth Third Mortg. Co. (In re J & M Salupo Dev. Co.),* 388 B.R. 795, 800-01 (B.A.P. 6th Cir. 2008).

"A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *Michigan Flyer LLC v.*

*Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017). "Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (internal citations omitted). *See also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).

Local Rule 9024-1(a)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

The "palpable defect" standard under the local rule has been held to be "not inconsistent" with the standard for Rule 59(e) motions. *Henderson*, 469 F.3d at 496.

## ANALYSIS

### A. Allegations in Amended Complaints Against Defendants Dietz and Riley

Plaintiff first argues that this Court improperly determined that the Amended Complaints failed to state a claim against Defendants Brian Dietz and Carolyn Riley, former Chief Executive Officers ("CEOs") of Community Memorial Hospital ("CMH"). In its Opinion Granting, in Part, and Denying, in Part, Defendants' Motions to Dismiss the Amended Complaint ("Opinion") this Court found that, aside from allegations regarding billing and coding issues, Plaintiff failed to state a claim against Dietz because the Amended Complaint did not allege that Dietz had the authority or responsibility to address the issues that were the basis for Plaintiff's claims of breach of fiduciary duty and/or negligence. (ECF No. 277). The Court's conclusion in this regard was based upon its analysis of two cases discussed by the parties, *Bridgeport Holdings, Inc. v. Boyer*

*(In re Bridgeport Holdings, Inc.)*, 388 B.R. 548 (Bankr. D. Del. 2008) and *Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. America, Inc.)*, 405 B.R. 527 (Bankr. D. Del. 2009), as well as another case noted by the Court, *Alberts v. Tuft (In re Greater Se. Comm. Hosp. Corp. I),* 333 B.R. 506 (Bankr. D.C. 2005). The courts in those cases uniformly found a failure to state a claim against defendant corporate officers where the complaints did not state facts demonstrating that the officers had the authority to take the actions or make the decisions that were the basis for the alleged breaches of duty.

In the Opinion now challenged by Plaintiff, this Court found a failure to state a claim against Riley based on her status as a volunteer director. The Court did not address Riley's status as a CEO because it was not alleged in the Amended Complaint that Riley held this position. (ECF No. 277, p. 15).

Plaintiff now argues that the Court's analysis regarding the claims against Dietz and Riley ignored the fact that the CMH Bylaws ("Bylaws") provide that the CEO is an "ex-officio" voting member of the board and, therefore, Dietz and Riley should be held to the same standard as the other volunteer directors. Plaintiff also asserts that the Bylaws give the CEO broad powers and responsibility to act so that Plaintiff can be found to have "plausibly alleged breaches of fiduciary duty by the CEOs." (ECF No. 282, p. 5). These arguments fail for three reasons.

First, as was noted above, the Court analyzed (and rejected) the claims against Riley in the context of her position as a volunteer director. The Court did not analyze the claims against Dietz in the context of the standard for directors because the complaint did not allege that he was a director "ex-officio" or otherwise.

Second, Plaintiff's argument in this Motion to Amend relies on provisions of the Bylaws which Plaintiff acknowledges were not previously presented to the Court. (ECF No. 282, Exhibit

4

A). To qualify as "newly discovered evidence" upon which a Rule 59(e) motion may be granted, evidence must have been previously unavailable. *GenCorp, Inc.*, 178 F.3d at 834. "Evidence is 'unavailable,' so as to justify its late submission by way of a motion under Rule 59(e) only if it could not, in the exercise of reasonable diligence, have been submitted before." *Javetz v. Bd. of Control, Grand Valley State Univ.,* 903 F. Supp. 1181, 1191 (W.D. Mich. 1995) (collecting cases). There is no indication that Plaintiff could not have accessed the Bylaws prior to filing the Amended Complaint or the responses to the Motions to Dismiss and thus, the Bylaws are not newly discovered evidence for purposes of this motion.[1]

Third, Plaintiff asserts that the Court failed to properly consider certain allegations in the Amended Complaint that Plaintiff now argues are enough to state a claim against Dietz on the other alleged breaches of duty. The Court rejects Plaintiff's attempt to re-argue the case in this manner. *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374.

Plaintiff next asserts that a portion of an email from a director that was quoted in the Amended Complaint demonstrates that Dietz had the "authority and responsibility for making whatever changes to hospital operations [sic] were necessary to put the Hospital on viable financial footing." (ECF No. 282-3, p. 7 n. 4). This email states, in part: "My understanding is that he [Dietz] was to make, in quick order, whatever staff or operational cuts were necessary to put CMH on a financially viable course."

First, this Court notes that the language in the email quoted by Plaintiff specifically references "staff or operational cuts." (Amended Complaint, ECF No. 192, ¶ 43). This

---

[1] Plaintiff argues that this Court took judicial notice of the amended articles of incorporation of CMH in addressing the Motions to Dismiss and should, therefore, take judicial notice of the Bylaws now presented by Plaintiff. However, the standard on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is distinct from the standard for a Rule 59(e) motion. The latter cannot be granted based upon evidence, such as the Bylaws relied on by Plaintiff, that is not "newly discovered." *GenCorp, Inc.*, 178 F.3d at 834.

5

language does not lead to a reasonable inference that Dietz that the authority to make "any changes necessary" to put the hospital on solid financial ground.

Additionally, it was not alleged that Dietz had the authority to make any changes necessary to improve the hospital's financial condition. Rather, the Amended Complaint made specific allegations against Dietz and all Defendants as to certain instances of nonfeasance or malfeasance that caused the Hospital's demise. As to Defendant Dietz it was alleged that he:

- Failed to address the Hospital's Losses from Employed physician practices
- Failed to address billing and coding issues
- Failed to ensure adequate controls over financial issues
- Participated in the sale of an interest in a joint venture (VitalCare) for less than fair market value
- Allowed excessive senior management turnover to continue
- Allowed excessive compensation of physician Board members to continue
- Did not act in the best interest of CMH when refinancing debt with Citizens Bank
- Systematically and consistently failed to address financial issues facing the hospital

(Amended Complaint, ECF No. 192). This Court, in the Opinion, examined each of the allegations of non-feasance or malfeasance against Dietz and found that, with exception of the billing and coding issue, Plaintiff's Amended Complaint failed to state a claim against Dietz.[2]

Moreover, several specific allegations in the Amended Complaint contradict Plaintiff's assertion in its Motion to Amend that Dietz had the authority to make "whatever changes necessary" to improve the Hospital's financial condition. For example, it was alleged that:

---

[2] Two of the allegations – the refinancing allegation and the "systematic" failure to address financial issues – were included in the Amended Complaint against Dietz, but the substance of these allegations only referenced the board's action or failure to act. (ECF No. 192, ¶¶ 78-82 and ¶¶ 83-93).

"Dietz went on to sharply criticize the Board's decision to bring on more employed physicians in 2009." (ECF No. 192, ¶ 35); "Dietz further explained that the failure of the employed medical practices to generate a positive revenue stream for the Hospital had been evident for years." (ECF No. 192, ¶ 37); "CEO Dietz also noted that the Board had been dragging its feet on making a decision to address its radiology expense and that 'it is costing us approximately $78,000/month until we make a change.'" (ECF No. 192, ¶ 38); "Even more troubling was the Board's continued resistance to CEO Dietz's recommendation that employed physician practices had to be dramatically cut for CMH to get back on stable financial footing . . . in short, the Board was more interested in not alienating the medical staff than addressing the employed physician services practices that were causing the Hospital millions of dollars in losses every year." (ECF No. 192, ¶ 44); "CEO Dietz continued to bang the drum that not only was CMH's financial situation precarious, but that the primary underlying issue that had to be addressed was the Hospital's employed medical practices." (ECF No. 192, ¶ 45).

Based on the foregoing, the Court denies the Motion to Alter or Amend the Judgment as it applies to Defendants Dietz and Riley. The Bylaws are not "new evidence" for the purposes of a Rule 59(e) motion. Further, the Court rejects the argument that the Amended Complaint sufficiently alleged that Defendant Dietz had the authority to make any changes necessary to improve the hospital's financial condition.

The Court notes that Plaintiff's Motion to Amend "also requests any other relief that this Court deems appropriate consistent with this motion, including the ability to amend its complaint against Defendants Dietz and Riley if necessary." (ECF No. 282, p. 16). Likewise, at oral argument on the Motion to Alter or Amend the Judgment, Plaintiff made the alternative argument that it should be permitted to amend the complaint again to include the allegation that

7

Riley was CEO of CMH and also to reference the Hospital's by-laws which allegedly provide that CEOs such as Dietz and Riley were also directors of CMH with the same responsibilities as the other directors and which allegedly give the CEOs broad power and responsibility to act on behalf of the hospital.

Federal Rule of Civil Procedure 15(a) made applicable to this adversary proceeding by Fed.R.Bankr.P. 7015, governs amendments to pleadings. "Although [Rule 15(a)(2)] provides that a court should freely give leave [to amend a complaint] when justice so requires, the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008). A denial of leave to amend may be appropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Plaintiff in this case has not filed a separate motion to file a second amended complaint. Rather, amendment of the complaint was proposed as alternate relief in the event Plaintiff's Rule 59(e) motion was denied as to the claims against Dietz and Riley. This Court is well within its discretion in denying this informal request. *See Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 783-84 (6th Cir. 2000) (denial of the plaintiff's request to amend complaint in the event the court found the complaint deficient made in the plaintiff's response to a motion to dismiss was not an abuse of discretion.) *See also Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003).

Moreover, this is not the standard motion for amendment of a complaint. Further considerations are involved where, as here, the request to amend the complaint comes after a judgment against the plaintiff. *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d

8

14-02020-dob    Doc 323    Filed 03/13/19    Entered 03/13/19 13:43:01    Page 8 of 20

612, 615-16 (6th Cir. 2010). In the post-judgment context, the competing interest of protecting the "finality of judgments and the expeditious termination of litigation" must be taken into consideration. *Id.* (quoting *Morse*, 290 F.3d at 800).

> If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then "reopen the case by amending their complaint to take account of the court's decision." That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities.
>
> When a party seeks to amend a complaint after an adverse judgment, it thus must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60. In post-judgment motions to amend, as a result, "the Rule 15 and Rule 59 inquires turn on the same factors." A court acts within its discretion in denying a Rule 15 and a Rule 59 motion on account of "undue delay" – including delay resulting from a failure to incorporate "previously [ ]available evidence, and ought to pay particular attention" to the movant's explanation for failing to seek leave to amend prior to the entry of judgment."

*Leisure Caviar*, 616 F.3d at 616 (internal citations and quotations omitted).

In *Leisure Caviar*, the district court dismissed the complaint for lack of subject matter jurisdiction and failure to state a claim. The plaintiffs then filed a Rule 59(e) motion and a Rule 15(a) motion to amend the complaint based upon the discovery of new evidence in the form of deposition testimony which would support a claim that the defendant government agency did not have proper guidelines in place to limit arbitrary decision-making by employees. The motions were denied. In affirming the denials, the Sixth Circuit Court of Appeals noted that "[i]t may be true that this information was 'newly discovered' in one sense, in that the plaintiffs apparently first learned about it during discovery. But the information should not have come as a surprise." *Id.* at 617. The court found that the "relevant regulations – all public" of the defendant agency

9

put the plaintiffs on notice about the discretionary nature of the government employees' responsibilities. *Id.* "A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion." *Id.* at 617. The district court did not exceed its discretion in denying the motions where plaintiffs failed to explain why they could not have learned of the agency officials' discretionary authority prior to the dismissal of the complaint. *Id.* at 617-18.

In the present case, Plaintiff does not offer any explanation as to why the CMH Bylaws were not referenced in or included with its amended complaint or even its responses to the Motions to Dismiss in this case.[3] There is no indication that the Bylaws were not available. Accordingly, as was stated previously, the Bylaws are not newly discovered evidence for purposes of Rule 59 and Plaintiff cannot meet the heavier burden required when amendment is sought after an adverse judgment.[4] *Leisure Caviar*, 616 F.3d at 616. Plaintiff's informal request to amend the complaint is denied.

**B. The Court's conclusion that the volunteer director defendants were immune from liability under the exculpatory provisions in CMH's amended articles of incorporation**

Plaintiff also asserts in its Motion to Amend that this Court erred in finding that the exculpatory clause in the amended articles of incorporation of CMH applied to immunize the

---

[3] Plaintiff does not explain why the CMH Bylaws were not included, but states in its Rule 59(e) motion that because the Court relied on a section of the Bylaws in its Opinion on the Defendants' Motions to Dismiss, consideration of the provisions of the Bylaws now relied on by Plaintiff is appropriate in deciding this Motion to Amend. (ECF No. 282-3, p. 4, n. 2). Contrary to Plaintiff's assertion, this Court's Opinion relied on an amendment to CMH's Articles of Incorporation with regard to another issue presented in the motions. The amendment to the articles of incorporation was attached to certain Defendants' Motions to Dismiss and was referenced in the arguments contained therein. (ECF No. 219, Exhibit 6). In contrast, the Bylaws relied on by Plaintiff in support of the assertion that Dietz and Riley had the same authority held by the volunteer directors were not brought to the Court's attention until this Motion to Amend.

[4] Moreover, the Court notes that any amendment to the complaint to include the provisions of the Bylaws in support of a claim against Riley would be futile as this Court has already considered the allegations against Riley in the context of her position as a director and found that the allegations failed to state a claim. (ECF No. 277, p. 15).

10

14-02020-dob    Doc 323    Filed 03/13/19    Entered 03/13/19 13:43:01    Page 10 of 20

volunteer director defendants from liability for gross negligence.[5] This ruling applied to Defendants Eno, Lieder, Ward, Borgerding, Burns, Dextrom, Franzon, McClurg, and Pletcher.[6] (ECF 277 pp. 26-30).

As was discussed in the Opinion, the current version of the Michigan Nonprofit Corporation Act (NCA) (effective January 15, 2015 after the complaint in this matter was filed) provides that an exculpatory clause may limit the liability of volunteer directors to the corporation for any action taken or any failure to take action except where the director received a

---

[5] The amendment to Article XI states:

> A volunteer director (as defined in the Michigan Non-Profit Corporation Act) of this Corporation shall not be personally liable to this Corporation or its shareholders or members, as the case may be, for monetary damages for breach of the director's fiduciary duty, provided however that this provision shall not eliminate or limit the liability of the director for any of the following:
>
> (i) A breach of the director's duty of loyalty to the Corporation or its shareholders or members, as the case may be.
>
> (ii) Acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of the law.
>
> (iii) A violation of Section 551(1) of the Michigan Non-Profit Corporation Act.
>
> (iv) A transaction from which the director derived an improper personal benefit.
>
> (v) An act or omission occurring before the effective date of the filing of this amendment.
>
> (vi) An act or omission that is grossly negligent.

The amendment also states:

> If the Michigan Non-Profit Corporation Act is amended to authorize corporate action further eliminating or limiting the personal liability of volunteer directors, then the liability of a volunteer director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Michigan Non-Profit Corporation Act, as so amended.

(ECF No. 219, Exhibit 6).

[6] The Motions to Dismiss filed by alleged voluntary directors Riley, Ellinger, Konicki and Nieland were granted for failure to state a claim. (ECF No. 277, p. 15, 22-23).

11

financial benefit to which he or she was not entitled; intentionally inflicted harm on the corporation; committed an intentional criminal act or violated provisions of the statute regarding the declaration of a dividend. Mich. Comp. Laws. § 450.2209(1)(c). In contrast, the prior version of the statute did not permit an exculpatory clause to limit liability of a volunteer director for, among other things, gross negligence. See 1996 Mich. Pub. Acts No. 397 § 1 (Eff. Oct. 9, 1996). The amended version of the statute further provides:

> If the articles of incorporation contain a provision that eliminates the liability of a volunteer director or volunteer officer that was filed before the effective date of the amendatory act that added this subsection, that provision is considered to eliminate the liability of a director or volunteer officer under subsection (1)(c).

Mich. Comp. Laws. § 450.2209(2) (footnote omitted).

In the Opinion this Court determined that, pursuant to the express language of § 450.2209(2), the exculpatory clause in the amended articles of incorporation of CMH, which was filed before the effective date of the amended statute, eliminated the liability of the voluntary directors in this case, including the liability for gross negligence, as permitted by § 450.2209(1)(c). (ECF No. 277, p. 30).

Plaintiff now argues that the Court's conclusion was erroneous and that the current version of the NCA cannot be applied to defeat a gross negligence cause of action against the volunteer directors. It is notable that in so doing, Plaintiff acknowledges that:

> Admittedly, the Trust devoted relatively little attention to this issue in its prior briefing, focusing on other issues under the belief that the lack of explicit language in the NCA demonstrating legislative intent to retroactively bar the Trust's already-filed claims was a proverbial 'slam dunk' argument. This motion presents a more thorough analysis of the issue, including citations to numerous additional Michigan cases that make it clear that the amendment to the NCA should not be applied to retroactively defeat the Trust's claim of gross negligence that had already been

>   brought against the volunteer defendants prior to the amendment of
>   the NCA.

(ECF No. 282-3, p. 2). Indeed, Plaintiff's brief in response to the Motion to Dismiss cited only one case on the issue, an unpublished case of the Michigan Court of Appeals – *Chrzanowski v. Willis*, No. 196174, 1997 WL 33344030 (Mich. Ct. App. Oct. 21, 1997) where the Court stated that "statutes are generally applied prospectively, unless the Legislature expressly or impliedly indicates its intent to give retroactive effect or unless the statute is remedial or procedural in nature." In contrast, Plaintiff devotes 8 pages and cites 11 cases on this argument in its Motion to Amend. Plaintiff now argues that it had a vested cause of action for gross negligence that accrued before the statute was amended to permit the elimination of liability for gross negligence and, as a result, § 450.2209(1)(c) cannot apply in this case.

First, this Court notes that Plaintiff's inadequate treatment of the issue prior to the entry of this Court's order on the Motions to Dismiss presents a dilemma for Plaintiff at this point as "Rule 59(e) motions are aimed at *re*consideration, not initial consideration." *World Univ.,* 978 F.2d at 16. A motion under Rule 59(e) cannot be used to raise a new legal argument that could have been raised before the judgment was issued. *Roger Miller Music*, 477 F.3d at 39. However, this Court may consider the argument now made by Plaintiff in support of its assertion against retroactive application to determine whether it is necessary to grant Plaintiff's motion to "prevent manifest injustice" in this case. *CGH Transp. Inc. v. Quebecor World, Inc.,* 261 F. App'x. 817, 824 (6th Cir. 2008).

Federal courts apply Michigan law when deciding whether a Michigan statute should be given retroactive effect. *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017). As Plaintiff now points out, the Supreme Court of Michigan has articulated four principles governing the question of whether an amended statute applies to a pre-enactment

cause of action. First, it must be considered whether there is specific language providing for retroactive application. *LaFontaine Saline, Inc. v. Chrysler Grp., LLC*, 852 N.W.2d 78, 85-86 (Mich. 2014) citing *Karl v. Bryant Air Conditioning Co. (In re Certified Questions from the United States Court of Appeals for the Sixth Circuit)*, 331 N.W.2d 456 (Mich. 1982). Second, a statute is not regarded as operating retroactively solely because it relates to an antecedent event (not an issue in this case). *Id.* Third, in determining retroactivity "[the court] must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past." *Id.* Fourth, a remedial or procedural act that does not affect vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. *Id.*

Regarding the first principle, "[t]he Legislature's expression of an intent to have a statute apply retroactively must be clear, direct, and unequivocal as appears from the context of the statute itself." *Davis v. State Emps.' Ret. Bd.*, 725 N.W.2d 56, 60 (Mich. Ct. App. 2006). "The Legislature's intent to apply an amended statute retroactively can be express or implied." *Id.* at 60 n.1. See also *People v. Russo*, 487 N.W.2d 698, 702 (Mich. 1992).

> [E]ven in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention. Endlish, Interpretation of Statutes, § 271.

*Detroit Trust Co. v. City of Detroit*, 256 N.W. 811, 813 (Mich. 1934). *See also State v. Upham (In re Davis' Estate),* 48 N.W.2d 151, 153 (Mich. 1951); *Twp. of Avon v. Mich. State Boundary Comm'n*, 293 N.W.2d 691, 695 (Mich. Ct. App. 1980).

As was noted previously, the statutory language at issue states, in pertinent part:

> If the articles of incorporation contain a provision that eliminates the liability of a volunteer director or volunteer officer that was filed before the effective date of the amendatory act that added this subsection, that provision is considered to eliminate the liability of a director or volunteer officer under subsection (1)(c).

Mich. Comp. Laws. 450.2209(2). This Court, in the Opinion, determined that the language of § 450.2209(2) made it clear that "exculpatory provisions, such as the one at issue in this case, filed before the statute was amended in 2015, are considered to eliminate liability under subsection (1)(c)" including any liability for gross negligence. (ECF No. 277, p. 30).

In support of its Motion to Amend Plaintiff has asserted that there is an alternative reading of the language in § 450.2209(2). That is, the provision indicates the Legislature's intent that articles of incorporation filed before the NCA was amended need not be refiled or amended to be considered to exclude liability as is now permitted by the amended provisions of subsection (1)(c). Upon consideration of this argument, the Court agrees that this is a possible interpretation of § 450.2209(2).[7] Allowing exculpatory clauses in previously filed articles of incorporation to be read as limiting liability to the fullest extent allowed by the law without requiring that the articles themselves be amended each time the law is changed is consistent with the NCA's stated purpose to "simply, clarify and modernize the law governing nonprofit corporations." Mich. Comp. Laws 450.2103(a). Given this alternative interpretation, the conclusion that the Legislature intended § 450.2209, as amended, to have retroactive application is not "a necessary,

---

[7] At least one other state court has evidenced a similar intent, albeit in more direct language than the NCA. See N.J. Ann. Stat. § 15A:2-8(d) which states regarding exculpatory clauses permitted in certificates of incorporation for non-profit corporations – "[t]he immunities provided for in this 1989 amendatory act shall apply to any corporation organized under Title 15A of the New Jersey Statutes which is established for the purposes provided for in P.L. 1959, c. 90 (C.2A:53A-7 et seq.), *whether or not the certificate of incorporation has been amended . . .*" (emphasis added).

unequivocal, and unavoidable implication" from the words or the subject matter of the statute. *In re Davis' Estate,* 48 N.W.2d at 153.

The next two factors that the Court must consider is (1) whether retroactive application of § 450.2209 would take away or impair vested rights and (2) whether the statute is remedial or procedural.[8] "[T]hese two factors essentially come to the same thing: *Either* an act is remedial or procedural *or* the act affects vested rights. Thus, the general rule is that if retroactive application of an act would take away or impair a vested right, the act is not remedial or procedural and should not be given retroactive effect." *Perlin v. Time, Inc.,* 237 F. Supp. 3d 623, 633 (E.D. Mich. 2017). "The term 'remedial' in this context should only be employed to describe legislation that does not affect substantive rights." *Frank W. Lynch & Co. v. Flex Techs., Inc.,* 624 N.W.2d 180, 183 (Mich. 2001). *See also Johnson v. Pastoriza*, 818 N.W.2d 279, 287 (Mich. 2012).

---

[8] Defendants Borgerding, Burandt, Coy, Oram and Watson assert that the issue of vested rights does not become relevant because the clear language of the 2015 amendment to the NCA indicates the Legislature's intent for retroactive application. That is, according to Defendants, if the Legislature expresses the intent that a statute is retroactive, no further analysis is necessary. The Court disagrees.

First, the Court notes that, given the possible alternate interpretation of the amendment, as described above, the Court cannot say that any legislative expression for retroactive effect is "clear, direct and unequivocal." *See Davis,* 725 N.W.2d at 60 (Mich. Ct. App. 2006).

Additionally, while the Legislature may indicate its intent for retroactive application, "constitutional due process principles act to prevent retrospective laws from divesting property rights or vested rights." *GMAC LLC v. Dept. of Treasury*, 781 N.W.2d 310, 318 (Mich. Ct. App. 2009) (citing *City of Detroit v. Walker*, 520 N.W.2d 135 (Mich. 1994).

In *GMAC LLC,* the enacting section of the amendatory act at issue specifically stated that it was to be retroactively applied. Nevertheless, the court, in its analysis, went on to consider whether vested rights were impaired by retroactive application. *See also Doe v. Dept. of Corrs.*, 641 N.W.2d 269, 275 (Mich. Ct. App. 2001) where the court found that it necessary to determine whether vested rights were impaired by the retroactive application of a statute even where the Legislature included language in the new act suggesting that it intended for the act to apply retroactively.

"A vested right has been defined as an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *Walker*, 520 N.W.2d at 143.

> [A] right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws: it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another.

*Cusick v. Feldpausch*, 243 N.W. 226, 226 (Mich. 1932) (citation omitted). A cause of action that has accrued (where all the facts have become operative and are known) becomes a vested right. *Karl*, 331 N.W.2d at 464; *Pontiac Police and Fire Retiree Prefunded Grp. Health and Ins. Trust Bd. of Trs. v. City of Pontiac*, 895 N.W.2d 206, 214 (Mich. Ct. App. 2016).

Plaintiff now asserts that it has a cause of action for gross negligence that is a vested right because it accrued before the 2015 amendment to the NCA.[9] (ECF No. 282-3, p. 15). Further, Plaintiff argues courts have declined to apply statutory amendments retroactively where the amendment abolishes an existing cause of action. Four cases support Plaintiff's position.

In *Cusiak*, 243 N.W. 226 (Mich. 1932) at the time the plaintiff's cause of action accrued the relevant statute allowed for a cause of action by a guest passenger against the owner of a motor vehicle. The statute, as amended, prohibited such cause of action in the absence of gross negligence or willful and wanton misconduct. *Cusiak,* 243 N.W.2d at 227. The Court noted that the amendment to the statute at issue did not involve a mere change in remedy or procedure but

---

[9] Plaintiff has not alleged a Gross Negligence Count in its Amended Complaints. The Amended Complaints against Defendants Borgerding, Burns, Dextrom, Franzon, Lieder, McClurg, Pletcher and Ward assert a Negligence Count (Count I) and a Breach of Fiduciary Duty Count (Count II). *See*, *e.g*., ECF No. 187, pp. 34-35. It is alleged, in the Breach of Fiduciary Duty Counts, that Defendants breached their fiduciary duties by engaging in grossly negligent conduct. *Id.*

The Amended Complaint against Defendant Eno (ECF No. 194) alleges counts of Breach of Fiduciary Duty, Negligence, Breach of Duty of Loyalty and Receipt of Improper Benefit. Gross negligence is asserted in support of the Breach of Fiduciary Duty Count.

was a change in a rule of substantive law. *Id.* Accordingly, the amendment would not be applied where doing so would deprive the plaintiff of an accrued right of action. *Id.*

Similarly, in *Devlin v. Morse*, 235 N.W. 812 (Mich. 1931), the court found that the amended guest passenger act should not have been applied where the plaintiff's common law cause of action for negligence accrued before the statute was amended.

In *Doe*, 641 N.W.2d at 274, the Michigan Persons With Disabilities Civil Rights Act (PWDCRA) was amended to specifically exclude incarcerated prisoners from the class of persons entitled to damages under the act. *Id.* The plaintiff 's cause of action accrued before the effective date of the statutory amendment. The court held that the retroactive application of the amendment was inappropriate where the plaintiff's vested cause of action was impaired under the amendment. *Id.* at 276.

In the fourth case, *Perlin,* an amendment changed a statute to require that a plaintiff prove actual damages in order to assert a claim under the statute. The court determined if the amendment were to be applied retroactively, the plaintiff would be deprived of her right to sue for statutory damages, which had accrued at the time the violations of the statute occurred.

> [T]here is no question that retroactive application of [the amendment] would impair Plaintiff's vested rights. Moreover, it is clear that [the amendment] is not merely procedural or remedial. [The amendment] completely excised the [statutory damages provision]. This was essentially a deletion of an entire cause of action. This was a substantive-not a procedural or remedial- change in the law.

*Perlin,* 237 F. Supp. 3d at 634 (citation omitted).

Defendants argue that the amendment to the NCA does not take away Plaintiff's claims for gross negligence, but only shields volunteer directors from liability for such claims. This is a distinction without a difference. Plaintiff had the ability to assert a cause of action based upon

claims of gross negligence prior to the 2015 amendment. That ability is now gone. Thus, there has been a substantive change in the law affecting Plaintiff's right to a cause of action. *See Cusiak*, 243 N.W.2d at 227.

Defendants also assert the amendment was remedial in the sense that it was intended to remedy an existing injustice and, therefore, should be applied retroactively. However, as was stated previously, a statute is considered "remedial" in the context of retroactivity analysis only if it does not affect substantive rights. *Frank W. Lynch & Co.*, 624 N.W.2d at 183; *Moeller,* 235 F. Supp.3d at 875 ("Michigan courts have been clear that a statute cannot be considered remedial if it affects substantive rights.")

Based upon the foregoing analysis, the Court concludes that application of the 2015 amendments to § 450.2209 to in this case would impair Plaintiff's "vested right" to a cause of action based upon gross negligence and is, therefore, inappropriate. The question is whether, based upon this conclusion, is it proper for the Court to grant Plaintiff's Motion to Amend? The Court finds that, under the circumstances of this case, it is.

It is evident that Plaintiff miscalculated in presuming that the question of retroactive application of § 450.2209 was a "slam dunk" in its favor. The detailed analysis employed in the parties' briefs on the Motion to Amend and in this Opinion indicates that the issue was worthy of a much more thorough treatment than was provided by Plaintiff in its response to the Motions to Dismiss. The Court recognizes that Plaintiff is seeking an extraordinary remedy through its Motion to Amend. However, the relevant case law on the issue of retroactive application of statutory amendments impairing vested rights discussed in this Opinion leads the Court to the conclusion that the prior decision on the issue should be revisited to avoid an inequitable result.

19

14-02020-dob    Doc 323    Filed 03/13/19    Entered 03/13/19 13:43:01    Page 19 of 20

*See Int'l Union United v. Bunting Bearings Corp. (In re Bunting Bearings Corp.),* 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004).

Accordingly, the Court grants Plaintiff's Motion to Amend on the issue of retroactive application of Mich. Comp. Laws. § 450.2209 to the allegations of gross negligence made in Plaintiff's Amended Complaints.

## CONCLUSION

For the reasons stated in this Opinion, the Court **Denies** Plaintiff's Motion to Amend as to the claims against Defendants Dietz and Riley. The Court also **Denies** the request to Amend the Complaints as to Dietz and Riley.

The Court **Grants** the Motion to Amend on the issue of retroactivity.

The Court will enter an order consistent with this Opinion.

**Signed on March 13, 2019**

/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge